328 So.2d 219 (1976)
Eugene M. LEDFORD and Alyce E. Ledford, His Wife, Appellants,
v.
T.S. SKINNER and Gary Leroy Skinner, Appellees.
No. Y-221.
District Court of Appeal of Florida, First District.
March 16, 1976.
*220 Fredrick L. Rice, Rice & Kreidler, Jacksonville, for appellants.
Richard O. Watson, St. Augustine, for appellees.
SMITH, Judge.
The Ledfords appeal from a decree requiring them to sell to the Skinners the car wash property which they leased to the Skinners subject to an option to purchase. The Ledfords insist that the Skinners did not exercise their option to purchase within the initial term or a renewal of the lease and, consequently, that the asserted exercise of the option to purchase was not timely. See Gower-Goheen Realty, Inc. v. Braun, 215 So.2d 499 (Fla.App.2d, 1968); Howard Cole & Co., Inc. v. Williams, 157 Fla. 851, 27 So.2d 352, 356 (1946); Annot., 15 A.L.R.3d 470, § 7 (1967).
The lease provided that its initial term would expire September 30, 1970, but that the Skinners might renew for three years at the same rental by notifying the Ledfords in writing 30 days before the end of the initial term. Under the principle of Sisco v. Rotenberg, 104 So.2d 365 (Fla. 1958), a timely renewal would extend not only the lease but also the life of the option to purchase exercisable within the term of the lease.
The Skinners failed to give notice of their desire to renew the lease on or before September 1, 1970, and they entirely failed to give the prescribed written notice. However, Mrs. Ledford and T.S. Skinner discussed renewing the lease in October 1970, about two weeks after the original term had expired. According to the view of the evidence most favorable to the Skinners, who prevailed in the trial court, Mrs. Ledford inquired whether the Skinners were going to renew and T.S. Skinner, aghast at having forgotten to give timely written notice, stated that he and his brother Gary did wish to renew and that they would "get her a letter." Mrs. Ledford replied that a letter was not necessary and that Skinner need not worry. There was no further discussion of renewal. The Skinners continued to pay the specified rental and continued to operate a car wash on the property, replacing worn out equipment and refinancing to lessen and extend their payments to an equipment financier.
The Skinners purportedly exercised their option to purchase on June 28, 1973, after having occupied and paid the stipulated rental for the car wash property for thirty-three months beyond the end of the initial term. The lease provided that credits against the purchase price of $20,000 were to be allowed the Skinners for the balance of an assumed mortgage and for all the rentals paid at $200 per month. The Ledfords acquiesced in the proposed sale and began making arrangements for closing until they discovered that crediting all the Skinner rental payments, now aggregating $13,000, would reduce the cash payable to the Ledfords at closing to a mere $823, out of which they could expect to pay $275 in closing costs and a fee to their attorney. Reflecting with disappointment on that prospect and on their having received net rental income of only $350 a year after mortgage payments, the Ledfords repudiated the proposed sale.
The efficacy of the Skinners' option to purchase in June 1973 depends, of course, on the existence of a renewed three-year leasehold term following September 1970. The Skinners admittedly gave no timely notice of their desire to renew the lease and they gave no written notice, as plainly required by the lease. Decisions elsewhere have held that the landlord's acceptance of rental payments after expiration of the original term waives a lease requirement for explicit notice of renewal. E.g., Armstrong v. Hendrickson, 160 Me. 230, 202 A.2d 558 (1964); Playmate Club, Inc. v. Country Clubs, Inc., 462 S.W.2d 890 (Tenn. App. 1970); Annot., 44 A.L.R.2d 1359, § 8[b] (1955); see also 51C C.J.S. Landlord & Tenant § 77 (1968). But a *221 Florida statute has provided in essentially the same terms since 1905 that "the mere payment or acceptance of rent shall not be construed to be a renewal of the said term" of a tenant holding over beyond the term of a written lease. Sec. 83.04, F.S. 1975. That statute has been given conclusive effect against a tenant holding over and claiming a renewed term notwithstanding his failure to give a required renewal notice. Painter v. Town of Groveland, 79 So.2d 765 (Fla. 1955); see also Brown v. Markham, 56 Fla. 202, 48 So. 39 (1909).
The factual issues in this case were submitted to a jury by stipulation of the parties. The jury, which was properly charged on the effect of § 83.04, F.S., found from all the circumstances that the Ledfords waived the lease requirement for timely written notice to renew, that a new three-year term began October 1, 1970, and therefore that the Skinners' option to purchase survived to be exercised in June 1973. According those findings the respect to which they are entitled, we believe they and the evidence bring the case within the rule of Dugan v. Haige, 54 So.2d 201, 202 (Fla. 1951). There, quoting with approval from 32 Am.Jur. Landlord and Tenant § 981 (1941), our Supreme Court held that
"... special circumstances ... may warrant a court of equity in granting relief against the consequences of the lessee's failure to notify the lessor, within the stipulated time, of an intention to exercise the privilege of renewal."
The Court in Dugan found "special circumstances" justifying equitable recognition of a renewed term, notwithstanding the lessees' tardiness by eighteen days in giving written notice to renew, in that "the lessors had actual notice of the lessees' intention to extend the lease [and] ... the lessors had not been harmed or damaged by the lessees' delay in giving the written notice... ." See also L'Engle v. Overstreet, 64 Fla. 339, 60 So. 120 (1912); Comment, 5 U.Fla.L.Rev. 338 (1952). In Painter, supra, 79 So.2d at 767, the Court recognized that the effect of § 83.04, F.S., might be varied on equitable grounds.
The Skinners' mere expression at trial of an intention to have timely exercised the renewal option is not sufficient to gain for them the benefit of a lease renewal and the dependent option to purchase. Tolin v. Pearce-Simpson, Inc., 186 So.2d 65 (Fla.App.3d, 1966). Neither did the Skinners' repair and refinancing of car wash equipment after October 1, 1970, constitute detrimental reliance which would appeal to equity for relief. Repairs and refinancing were necessary or convenient to the continued operation of the car wash, which the Ledfords were willing to permit indefinitely, upon continued payment of the rent. But the conversation between Mrs. Ledford and T.S. Skinner in October 1970 and the Ledfords' acceptance of $200 monthly for thirty-three months after expiration of the initial term constituted equitable grounds to foreclose the Ledfords from relying on a lapse of the term of the lease.
The lease as originally negotiated gave the Skinners the right to regard their $200 monthly payments not only as rentals for the use of the land, not simply as the price of preserving an option to purchase, but as periodic payments of the purchase price. While the lease thus entitled the Skinners to buy the Ledfords' land for a small price paid in time without interest, we cannot relieve the Ledfords of the bargain. To hold in these circumstances that § 83.04, F.S., transformed the Skinners' payments after September 1970 into mere rentals of a tenant at sufferance or at will, we should have to disregard entirely the conversation between T.S. Skinner and Mrs. Ledford during October. As a result of that conversation, the October payment and all subsequent payments were referable to and explained by the lease alone. It would be inequitable now to deprive the Skinners of the bargained-for character of their thirty-three payments after September 1970 *222 merely because they erred in the form and timing of their renewal, which did not mislead the Ledfords.
There is evidence from which the trier of the facts could lawfully have resolved this controversy favorably to the Skinners. The Ledfords' other points on appeal do not require reversal. The decree of the trial court is
AFFIRMED.
RAWLS, Acting C.J., and McCORD, J., concur.